IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

TAJA INVESTMENTS LLC, *et al.*,     )
     )
     )
    Plaintiffs,     )
     )    Case No.  1:15-cv-01647-GBL-TCB
    v.     )
     )
PEERLESS INSURANCE CO.,     )
a/k/a LIBERTY MUTUAL INSURANCE CO.,    )
     )
    Defendant.     )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Taja Investments LLC and Taja Construction & Rehab, Inc. ("Plaintiff" or "Taja") and Defendant Peerless Insurance Co., a/k/a Liberty Mutual Insurance Co.'s ("Defendant" or "Peerless") Cross-Motions for Summary Judgment under Federal Rule of Civil Procedure 56. (Doc. 33; Doc. 31). This case concerns Plaintiff's insurance coverage for the collapse of a wall at a Washington, DC residential property where Defendant was conducting renovations. The issue before the Court is whether either of the two exclusions identified by Peerless in the insurance policy, the workmanship exclusion ("Workmanship exclusion") or the earth movement exclusion ("Earth Movement exclusion"), exsclulde Plaintiff's claim for the building's east wall collapse. The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for two reasons. First, the Workmanship exclusion precludes coverage because Plaintiff's acts, errors, and omissions related to the excavation of the basement coupled with the failure to install underpinning to secure the building's foundation caused the east wall's collapse. Furthermore, the ensuing loss exception fails to restore coverage because no independent and covered peril

contributed to the collapse other than Plaintiff's excluded conduct.  Second, the Earth Movement exclusion is also precludes Plaintiff's coverage claim because although Plaintiff's relevant conduct occurred below grade, it still involved movement of soil and clay at the earth's surface. Accordingly, Defendant's Motion for Summary Judgment (Doc. 33) is GRANTED and Plaintiffs' Motion for Summary Judgment (Doc. 31) is DENIED because both the workmanship exclusion and the earth movement exclusion of the insurance policy entitle Defendant to withhold coverage and deny Plaintiff's claim.

## I. BACKGROUND

The material facts in this case are not in dispute.  Plaintiff Taja is a construction company organized under the laws of Maryland with its principal place of business in Maryland, and Defendant Peerless is an insurance company organized under the laws of New Hampshire and maintains its principal place of business in New Hampshire. (Compl. at ¶¶ 1-2). The insurance policy ("the Policy") is an "all risk" policy which covers all risk of loss except those expressly excluded under the Policy's terms. (Compl. at ¶ 8; Doc. 36-1, at 73). The insured property at issue is a row house on New York Avenue in Northwest Washington, DC.   Taja began renovating the property's four-to-five foot basement as part of a restoration plan, which involved excavating the existing crawl space in order to create a depth of nine feet to allow living areas to be created. (Doc. 34, at 1-2).  The project's structural plans reveal that Taja was to excavate the basement in discrete stages, underpinning the structure at every step to prevent risk of collapse. (Doc. 40, at 3-4).

Taja principal Michael Watson received cautionary warnings about the importance of underpinning from project engineer Dennis Anibaba as far as three weeks prior to the incident. (Doc. 36-3, at 21:3-27:20).  Approximately two days before the incident, Brian Brown, the

2

owner of NextGen Construction that had renovated the building next door, raised his concern with Watson about the lack of underpinning. He informed Watson that he was "concerned about the stability of [the] below grade soil . . . [the] subcontractor is not doing what he should be doing." (*Id.* at 10:6-13:6; Doc. 36-5, at 6:14-9:9). Owen Wilson, owner of the excavation contractor, confirmed that the traditional method is to do a "little bit of digging and [then] do your underpinning," and inserted a special clause in the contract with Taja to refuse responsibility for any collapse due to lack of underpinning. (Doc. 36-6, at 19:20-21:14).

On June 10, 2014, the east wall of the building collapsed. (Compl. at ¶ 7). At the time of the wall's collapse, Watson confirmed that no underpinning had been performed. (Doc. 36-4, at 81:9-82:25). Taja paid $142,275 for the immediate shoring and bracing of the damages following the collapse, and repairs to place the building back into pre-collapse condition are $407,885.89, not including any costs for excavation or installation of a foundation. (Doc. 34, at 3). Taja made an insurance claim on Peerless, and Peerless visited the site on June 20, 2014 for inspection. (Doc. 34, at 3-4). Peerless hired engineer Mr. Zachary Kates of Thornton Tomasetti, who determined that the contractor should not have excavated the entire basement without performing underpinning, and that as a result the soil and clay below the east wall became unstable and contributed to the collapse of the east wall. (Doc. 34, at 4).

In February 2015, eight months after the collapse and Peerless' site inspection, Peerless stated it would not cover Taja's sustained losses, citing that both the Workmanship exclusion and the Earth Movement exclusion entitled them to withhold coverage. (Doc. 34, at 8; Doc. 34-6, at 1-2). The Workmanship exclusion states that "defects, errors, and omissions relating to design, specifications, construction, or workmanship are not covered, but if loss by another covered peril results, Peerless will pay for the resulting loss." (Doc. 34-1, at 75-76). The Earth Movement

3

exclusion states that Peerless "will not pay for loss caused by any earth movement (other than sinkhole collapse)," and defines the term as encompassing "any movement or vibration of the Earth's surface including but not limited to earthquake, landslide, mudflow, mudslide, mine subsidence, or sinking, rising, or shifting of the Earth." (*Id.* at 73).

After Peerless refused to cover Taja's losses, Taja filed suit in the Circuit Court of Fairfax County on August 28th, 2015, alleging one count of breach of policy of insurance. (Compl. at ¶ 1).  Taja maintains that it is entitled to damages approximating $400,000, plus interest from the date of loss until the time of judgment at the legal rate, with other associated relief costs that the Court may seem fit. (*Id.* at 4). Peerless subsequently filed for removal to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (*Id.* at ¶ 1).  This case is properly before the Court pursuant to the diversity jurisdiction requirements set out in 28 U.S.C. § 1332.  Taja and Peerless subsequently filed cross-motions for summary judgment on May 27, 2016. (Doc. 31; Doc. 33).

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2013).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures*, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## B. Analysis

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for two reasons. First, the Workmanship exclusion is applicable because the Court readily finds that Plaintiff's own acts, errors, and omissions related to the over-excavation of the basement coupled with the failure to install necessary underpinning to

secure the building's foundation caused the east wall's collapse. The Court further holds that the ensuing loss exception fails to restore coverage because no other independent or interceding covered peril contributed to the collapse other than Plaintiff's excluded conduct. Second, the Earth Movement exception is also applicable because although all of Plaintiff's relevant conduct involved "below grade" soil and clay, the Policy expressly excludes coverage for activity that occurred at the earth's surface level, irrespective of whether it is below grade or not. In sum, because the undisputed material facts show that both exclusions under the Policy are applicable, Defendant is entitled to judgment as a matter of law.

## A. The Workmanship Exclusion

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment, because the Policy's Workmanship exclusion applies in light of Taja's acts, errors, and omissions involving the excavation and failure to install underpinning resulted in the east wall's collapse. Furthermore, the ensuing loss exception fails to restore coverage because no independent or superseding act that is covered under the Policy contributed to the collapse.

### 1. Cause of Collapse

A workmanship exclusion is applicable when the insured's loss is attributable to the quality of the constructed property and arises from defects in the materials or process used by the insured or its agents to construct the property. *See Limbach Co. v. Zurich Am. Ins. Co.*, 396 F.3d 358, 362 (4th Cir. 2005) (finding that a workmanship exclusion would only apply to the extent that the insured's losses were sustained as a result of its own workmanship); *see also 1765 First Assocs., LLC v. Cont'l Cas. Co.*, 817 F. Supp. 2d 374, 376 (S.D.N.Y. 2011). The exclusion does not apply to losses caused by actions or defective equipment not attributable to the insured

builder. *1765 First Assocs.*, 817 F. Supp. 2d at 376. Thus, in order for an insurer to deny coverage based on a workmanship exclusion, a court must be able to attribute the acts or omissions giving rise to the stated loss to the insured. *Id.* While some courts and insurance policies may refer to the workmanship exclusion as the "faulty workmanship" exclusion when the policy's language intends to only exclude an insured's negligent workmanship, policies such as the Policy here expressly intend to cover "any act, defect, error, or omission (*negligent or not*) relating to . . . construction [or] workmanship" require only the act or omission. (Doc. 34-1, at 75-76) (emphasis added).

In the present case, Defendant's Motion for Summary Judgment is granted because the Policy's Workmanship exclusion is clearly applicable to Plaintiff's undisputed conduct. As Defendant asserts, and Plaintiff tacitly acknowledges, the cause of the collapse is directly attributable to the acts and omissions of Plaintiff in excavating the entirety of the basement without performing any underpinning to secure the foundation of the walls.[1] Defendant highlights, and Plaintiff does not dispute, that the deposition testimonies of Mr. Dennis Anibaba, Mr. Owen Wilson, and Mr. Zachary Kates, all lend support to the conclusion that Plaintiff's excavation, coupled with lack of underpinning, resulted in the wall's collapse. Furthermore, Taja designated Mr. Kates as its own expert and accepted Mr. Kates' report on the incident, which stated that Taja had failed to follow the construction plan, and that the over-excavation

---

[1] In Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Reply brief, Taja introduces and reiterates a claim that the official cause of the collapse is unknown and cannot be known because no one was present on-site at the time of the collapse (Doc. 41, at 8-9). However, Plaintiff's briefs contain numerous instances in which Plaintiff either tacitly or directly states that the excavation and lack of underpinning contributed to the collapse (Doc. 34, at 21; at 24; at 26, at 27-28, at 30).

coupled with the lack of underpinning contributed to the east wall's collapse.[2]  (Doc. 34-1, at 4). Thus, because the acts of excavation and the omissions in failing to support the structure with necessary underpinning are directly attributable to the Plaintiff, and because these acts and omissions resulted in the wall's collapse, the Workmanship exclusion is applicable.

### 2. Ensuing Loss Clause

Once an insured triggers the workmanship exclusion, courts generally interpret "ensuing loss" clauses as restoring coverage to the insured only when an independent and covered loss occurs subsequent to the excluded acts or omissions giving rise to losses.  Virginia precedent clarifies that "[a]n exception to an exclusion does not create coverage where none exists." *PBM Nutritionals LLC V. Lexington Ins. Co.*, 724 S.E.2d 707, 713 (Va. 2012) (citing *Nationwide Mut. Ins. Co. v. Wenger*, 278 S.E.2d 874, 877 (Va. 1981)).  This court has required an additional, covered cause to trigger an ensuing loss provision with respect to Virginia insurance claims.  *See Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 718-19 (E.D. Va. 2010), *aff'd*, 504 Fed. Appx. 251 (4th Cir. 2013) (reasoning that to be an ensuing loss, the loss must occur subsequent in time to the initial excluded conduct, and that the loss cannot be excluded by any other provision in the policy).  In *Fidelity and Guaranty Insurance Underwriters, Inc. v. Allied Realty Co.*, the Virginia Supreme Court found that the deterioration, cracking, and bulging in the insured's retaining wall that led to condemnation of the property was due in part to structural defects, thus potentially implicating the deterioration or latent defect exclusion.  384 S.E.2d 613, 614-15 (Va. 1989). However, the court held that coverage was appropriate because evidence suggested that certain "earth pressures," which were a covered peril, were the primary cause of the insured's sustained

---

[2] "[The excavation] left the portion of soil below the wall and adjacent to the excavation in an unstable condition.  It is our opinion that the soil below the wall failed causing the wall to move downward and inward into the excavation leading to the loss of wall support and the partial collapse observed."

losses. *Id.* at 617. Although the court found no exclusion applicable, and thus did not reach the question of interpreting an ensuing loss provision, the court's analysis indicates the independent and covered peril of earth pressure afforded the insured coverage, regardless of whether the initial exclusion applied or not. *Id.*

A majority of courts in other jurisdictions similarly hold that the ensuing loss exception is applicable when the loss is the result of an independent or superseding cause that is covered under the terms of the policy. *See, e.g., Arnold v. Cincinnati Ins. Co.*, 688 N.W.2d 708, 715-16 (WI App. 2004) (concluding that an ensuing loss must result from a cause in addition to the excluded cause); *cf. Performing Arts Cmty. Improvement Dist. V. Ace Am. Ins. Co.*, 2015 WL 34191292, at *6 (W.D. Mo. June 3, 2015) ("If a defectively-designed building collapses, one does not characterize the effect of gravitational forces as a distinct and separate event, and the cost of replacing the collapsed building is not an ensuing loss.").

Courts adopting this approach have declined to restore coverage where the insured's sustained losses resulted from the effects of an excluded loss over time. In *Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.*, the Fifth Circuit interpreted an analogous workmanship exclusion with an ensuing loss provision as failing to restore coverage to the collapse of a defectively made wall. 219 F.3d 501, 506-08 (5th Cir. 2000) (rejecting application of an ensuing loss provision because the policy contemplates that such "ensuing loss" must be different in kind, not merely in degree, and must also be extraneous to the excluded conduct). Similarly, in *In Re Chinese Manufactured Drywall Products Liability Litigation*, the court found that because the insured's losses resulting from odors emitted by a defectively built Chinese drywall were a direct and continuous result of the drywall's defect, the ensuing loss exception was not applicable to restore coverage. 759 F. Supp. 2d 822, at 850 (E.D. La. 2010);

9

*see also Holland v. Breaux*, 2005 WL 3542899, at *6 (E.D. La. Nov. 22, 2005) (finding the ensuing loss clause inapplicable because the sagging floor, walls, and door frames were a direct result of a defectively made foundation, and no other separate and distinct cause intervened to contribute to the losses). In *Holland*, the court rejected the insured's argument that the structure's condition was caused by the covered peril of collapse, holding that the insured had failed to distinguish the cause of collapse from the excluded damage to the foundation. *Id.*

However, some courts have been reluctant to impose a requirement of an independent and additional covered cause before restoring coverage. The court in *Selective Way Insurance Co. v. National Fire Insurance Co. of Hartford* distinguished the loss or damage in covering the faulty work itself from the loss caused to property "wholly separate" from the defective workmanship. 988 F. Supp. 2d 530, 538 (D. Md. 2013). The court concluded that while the cost of replacing the faulty installation of the water line fitting was excluded under the workmanship exclusion, the ensuing damage to the building from the flow of water was an ensuing loss covered under the policy. *Id.*; *see also Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 308-09 (Wash. 2012) (finding that the ensuing loss clause restored coverage to collapse damages because collapse is covered under the policy, despite the cause of the collapse being attributable to the faulty workmanship of the insured).

In the present case, the ensuing loss exception fails to restore coverage because Virginia law requires that an additional covered peril is needed to trigger the ensuing loss provision. *See Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 718-19 (E.D. Va. 2010), Aff'd, 504 Fed. Appx. 251 (4th Cir. 2013) (declining to find the ensuing loss provision applicable because the relevant damage occurred gradually over a period of time and was merely a single discrete loss from a single discrete injury). Here, both parties do not dispute that the cause of the collapse was due to

the acts and omissions of the Plaintiff, thus requiring Plaintiff to identify an independent covered cause in order to restore coverage. Although Plaintiff cites *Allied Realty* in support of its argument that Virginia law does not require an additional cause to trigger an ensuing loss provision, *Allied Realty*'s holding is inapposite and runs contrary to Plaintiff's argument. In that case, the Virginia Supreme Court never reached the question of restoring coverage under the ensuing loss clause because it did not find any exclusion applicable. *Fidelity and Guaranty Insurance Underwriters, Inc. v. Allied Realty Co.*, 384 S.E.2d 613, 614-15 (Va. 1989) (finding earth pressure, a covered peril, to be the cause of the collapse). Furthermore, the court reasoned that earth pressure, a separate and covered peril, had contributed to the insured's sustained losses. *Id.* at 617. *Allied Realty* only further supports Defendant's argument that Virginia law affords coverage only when an additional and covered peril contributes to the insured's losses.

Plaintiff's remaining argument rests on attempting to distinguish the cost of replacing the workmanship itself, which Plaintiff concedes is not covered, from the cost of replacing the structure, which Plaintiff argues is ensuing because collapse itself is covered and because Plaintiff's losses resulted from the collapse of the east wall. However, such a distinction is unavailing because Plaintiff merely attempts to separate cause and effect. By saying the collapse is a covered peril that caused the loss in question, Plaintiff wishes to either ignore or separate the cause of the collapse, which is Plaintiff's conduct expressly excluded in the Workmanship exclusion. Plaintiff is essentially asking the Court to write the Workmanship exclusion out of the Policy, because under Plaintiff's theory any losses that occur subsequent in time to the excluded workmanship are restored simply because of the passage of time. Such a theory is contrary to basic Virginia principles of contract interpretation. *See TM Delmarva Power, LLC v. NCP of Virginia, LLC*, 557 S.E.2d 199, 201 (Va. 2002) ("no word or clause in a contract will be treated

as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract") (citing *D.C. McClain, Inc. v. Arlington County*, 452 S.E.2d 659, 662).   Moreover, the courts in both *Holland* and *Performing Arts* specifically addressed, and declined to follow, Plaintiff's line of argument. *Holland v. Breaux*, 2005 WL 3542899, at *6 (E.D. La. Nov. 22, 2005) (holding that insured must be able to separate the cause of the collapse from excluded conduct in order to trigger the ensuing loss clause); *see also Performing Arts Cmty. Improvement Dist. v. Ace Am. Ins. Co.*, 2015 WL 34191292, at *6 (W.D. Mo. June 3, 2015) (reasoning that the effect of gravitational forces are not a distinct and separate event for purposes of triggering an ensuing loss clause).

Plaintiff relies on cases that are not applicable or are otherwise not persuasive.  Plaintiff's argument depends heavily on *Vision One*, but this ruling impermissibly abrogates the scope of the workmanship exclusion. *See TM Delmarva Power, LLC*, 557 S.E.2d at 201 ("no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract"). The majority opinion in *Vision One* held that if an alleged ensuing loss is not otherwise excluded, it is covered.  276 P.3d 300, 308-09 (Wash. 2012) (finding that the ensuing loss clause restored coverage to collapse damages because collapse is covered under the policy, despite the cause of the collapse being attributable to the faulty workmanship of the insured).  However, this ignores applicability of the workmanship exclusion itself, which expressly excludes coverage for losses resulting from an insured's acts and omissions relating to construction.  To adopt the court's interpretation in *Vision One* would run contrary to Virginia precedent and effectively nullify the workmanship exclusion entirely because it would compel coverage for losses resulting from events such as the

collapse at issue here that are clearly the result of conduct that Peerless and other insurance companies intend to exclude when drafting the exclusion.

Plaintiff also relies on *Selective Way* and *Dow Chemical*, both of which are readily distinguishable from the case at bar. *Selective Way* stands merely for the proposition that damaged items separate from the defective work itself were covered under that specific policy. 988 F. Supp. 2d 530, 538 (D. Md. 2013). The facts of *Selective Way* are distinguishable in two respects. First, the only items covered in that case were those independent of the defective water line, with the actual water line and fountain itself being excluded from coverage. *Id.* Second, the policy in that case expressly covered damage to items separate from the defective workmanship but still resulted from the workmanship itself. *Id.* These two factors taken together preclude applying *Selective Way* to the present case, because Plaintiff here seeks coverage for losses sustained from the east wall's collapse, which is directly attributable to Plaintiff's excluded acts and omissions. *Dow Chemical* is similarly distinguishable. The court in that case never reached the question of applicability of the ensuing loss clause because it had found no exclusions were applicable to prevent coverage of the insured's losses. *See Dow Chemical Co. v. Royal Indem. Co.*, 635 F.2d 379, 387-91 (5th Cir. 1981).

Accordingly, the Court holds that the Policy's Workmanship exclusion is applicable because the undisputed acts, errors, and omissions of Plaintiff, namely, the excavation and failure to install necessary underpinning to secure the building's foundation, caused the east wall's collapse. Furthermore, the ensuing loss exception fails to restore coverage because no other independent act contributed to the collapse other than Plaintiff's excluded conduct. Therefore, because the undisputed facts show Defendant is entitled to judgment as a matter of

13

law, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion

for Summary Judgment.

## B. The Earth Movement Exclusion

Additionally, the Court grants Defendant's Motion for Summary Judgment and denies

Plaintiff's Motion for Summary Judgment under the Earth Movement exclusion because

although the relevant earth movement activity occurred "below grade," Plaintiff's relevant

conduct still occurred at the earth's surface.  Plaintiff argues that the Earth Movement exclusion

is only applicable to movements or vibrations at the earth's surface, and therefore the Policy

affords coverage for earth movements or vibrations below the Earth surface.  Defendant argues

that Plaintiff's activity occurred at the earth's surface level despite being below grade, and also

that Plaintiff is impermissibly attempting to introduce new terms and ambiguity into the Policy's

terms.

Under Virginia law, insurance policies are treated as ordinary contracts and subject to the

same rules of interpretation.  The Virginia Supreme Court directs courts to give words "their

ordinary and customary meaning when they are susceptible of such construction." *Hill v. State

Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 729 (Va. 1989).  Courts "must adhere to the terms of

a contract of insurance as written, if they are plain and clear and not in violation of or

inconsistent with public policy." *Nat'l Hous. Bldg. Corp. v. Acordia of Virginia Ins. Agency,

Inc.*, 591 S.E.2d 88, 90-91 (Va. 2004); *see also Landmark HHH, LLC v. Gi Hwa Park*, 671

S.E.2d 143, 147 (Va. 2009) ("[W]hen interpreting a contract, we construe it as written and will

not add terms the parties themselves did not include.").

Virginia courts are reluctant to change the language of an insurance policy because the

function of the court is "not to make a new contract for the parties different from that plainly

intended and thus create a liability not assumed by the insurer." *Nat'l Hous. Bldg. Corp.*, 591 S.E.2d, at 90-91 (citing *Blue Cross & Blue Shield v. Keller*, 450 S.E.2d 136, 140). Virginia courts will find ambiguity in the context of an insurance policy when a term may reasonably be understood in more than one way. *See Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013) (stating that if the plain language may be interpreted in more than one way, courts are directed to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured); *but see PBM Nutritionals LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 713 (Va. 2012) ("an insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language").

This court specifically has addressed the scope of earth movement exclusions in analogous situations. In *Sentinel Associates v. American Manufacturers Mutual Insurance Co.*, this court limited the scope of a general term to "embrace only objects similar in nature to those things identified in the specific [terms]" listed in the policy. 804 F. Supp. 815, 818 (E.D. Va. 1992), Aff'd 30 F.3d 130 (4th Cir. 1994) (citing *Cape Henry Towers, Inc. v. Nat'l Gypsum Co*, 331 S.E.2d 476, 481 (Va. 2011)). Applying this doctrine, this court determined that the specific terms "earthquake," "landslide," and "earth sinking, rising or shifting" restricted the general term "earth movement" to exclude only naturally occurring phenomena from coverage, thus affording coverage for man-made events that resulted in earth movement. *Id.*; *cf. Tastee Treats, Inc. v. U.S. Fid. and Guar. Co.*, 2008 WL 2836701, at *3-4 (S.D. W.Va. July 21, 2008) (finding the exclusion relating to mine subsidence as evidence that the policy's earth movement exclusion could apply to both natural and man-made events). In *Great American Insurance Co. v. Bogley*, the insured's retaining wall collapsed because of lateral below grade pressure that caused the wall to tilt and fall. 837 F. Supp.2d 570, 572 (E.D. Va. 2011). This court interpreted an earth

movement exclusion which expressly excluded coverage for, among other events, soil conditions including action of water under the ground surface that causes settling or cracking of a wall's foundation. *Id.* at 573-74. The court found that the exclusion did apply to exclude coverage for the wall's collapse because below grade pressure was contemplated in the policy. *Id.*

In the present case, the Earth Movement exclusion covers Plaintiff's conduct because the terms of the policy are unambiguous and Plaintiff may not introduce ambiguity in an attempt to alter the meaning of the Policy. First, the Policy plainly indicates that the Earth Movement exclusion is applicable to natural and man-made phenomena. (Doc. 34-1, at 73-74). Unlike the policy in *Sentinel Associates*, which only contained naturally occurring events in its specifications of excluded events, the Policy here includes a reference to mine subsidence, which courts like *Tastee Treats* have interpreted as implicating man-made events. *Tastee Treats, Inc.*, 2008 WL 2836701, at *3-4 (S.D. W.Va. July 21, 2008) (finding the exclusion relating to mine subsidence as support for interpretation that the policy's earth movement exclusion could apply to both natural and man-made events). Furthermore, this Policy includes the prefatory statement "including but not limited to" to indicate broader exclusionary reach than just the examples listed in the Policy's text. Thus, the doctrine of *noscitur a sociis* does not abrogate the Earth Movement exclusion, and the scope of the exclusion properly extends to both man-made and naturally occurring phenomena.

The Earth Movement exclusion is also applicable to the relevant conduct in question because the terms of the policy plainly apply to earth movement at the earth's surface with no reference to the original grade, and Plaintiff may not attempt to introduce ambiguity in order to redefine the Policy. *See Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 672 (Va. 2002) ("[a]mbiguity cannot be established based on the addition of language not contained

in the writing"); *see also Kennard v. Travelers' Protective Ass'n,* 160 S.E. 38, 39 (Va. 1931) ("[c]ourts should not make uncertain that which is certain, and they cannot make contracts for the parties"). Plaintiff asserts that the relevant activity occurred below the earth surface, but Plaintiff's evidence and cited deposition testimony merely emphasize that the relevant activity occurred *below grade.*[3] The Policy here clearly excludes coverage for movement or vibration at the earth's surface, and makes no reference to below grade activity as constraining the Earth Movement exclusion's application.

Plaintiff alternatively argues that the term "surface" is itself ambiguous, and as a result that this Court should apply the doctrine of *contra proferentum* and resolve the ambiguity in favor of Plaintiff as the insured party. Plaintiff asserts that an alternative definition of "surface" encompasses only the "external or superficial aspect of" the earth. However, Plaintiff cites no authority to support this assertion. Moreover, the Virginia Supreme Court in *Eure* clarified that ambiguity cannot be established based on addition of language and terminology not contained in the initial writing, which is what Plaintiff intends to do by introducing references to "grade" to alter the Policy. 561 S.E.2d 663, 672 (Va. 2002).

Using the plain meaning of these words, it is evident that while the movement that caused the east wall's collapse occurred below grade (in the basement, below the ground level of the structure), it still involved movement of the earth surface (the uppermost layer of the soil and clay). Because the terms are unambiguously distinct, Plaintiff may neither contravene *Eure* by

---

[3] Black's Law Dictionary defines "surface" as "[t]he top layer of something, especially of land." *Surface, Black's Law Dictionary* (10th Ed. 2014); *see also Merriam-Webster Dictionary* ("the upper layer of an area of land or water . . . the exterior or upper boundary of an object or body . . ."; *Oxford Dictionary* ("the outside part or uppermost layer or area"). By contrast, "grade" in the construction context is defined as a "datum or reference level, *especially* ground level" *Merriam-Webster* Dictionary; *see also Below Grade, Investor Words Glossary* ("any structure or part of a structure that is below the surface *of the ground that surrounds it*") (emphasis added) available at http://www.investorwords.com/12937/below_grade.html .

introducing the term "grade" to alter the policy, nor may Plaintiff conflate the terms "grade" and "surface" in order to introduce an ambiguity. The court in *Bogley* found that below grade lateral pressure that resulted in earth movement and the collapse of the insured's wall was implicated and thus excluded under the earth movement exclusion. While the facts surrounding the collapse in that case are distinguishable, the *Bogley* holding is still pertinent here because this Court has had no trouble distinguishing between "grade" and "surface" in prior cases.

Plaintiff also argues that a different Peerless insurance policy, which excludes soil conditions including "contraction, expansion . . . improperly compacted soil and the action of water under the ground surface," is evidence that Defendant intentionally meant to omit such exclusionary reach in the present Policy. (Doc. 34-13, at 25). This argument is not persuasive because the other policy included the language "under the ground surface" to specifically exclude the movement of water, something Defendant at no point has argued in the present case. The Policy here contains no express mention of soil conditions or any intention to exclude action of water below the ground surface. Therefore, the most Plaintiff could assert is that Defendant did not intend to exclude certain soil conditions or movement of water below the earth surface, which would have no bearing on the type of earth movement at issue here.

Accordingly, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment because the Earth Movement exclusion is applicable because although Plaintiff's relevant conduct occurred below grade, the earth movement activity still occurred at the earth's surface level.

## II. CONCLUSION

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment because the undisputed material facts show Defendant is entitled

to judgment as a matter of law for two reasons.  First, the Workmanship exclusion applies because the acts, errors, and omissions of Plaintiff related to the failure to install underpinning to secure the building's foundation caused the east wall's collapse.  Furthermore, the ensuing loss exception fails to restore coverage because there was no independent or superseding covered peril that contributed to the Plaintiff's sustained losses.  Second, the Earth Movement exclusion is applicable because although Plaintiff's relevant conduct occurred below grade, the earth movement activity still occurred at the earth's surface level. For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Peerless' Motion for Summary Judgment (Doc. 33) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Taja's Motion for Summary Judgment (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

**ENTERED this $\underline{2/\!\!\!\!/}$ day of July, 2016.**

**Alexandria, Virginia**

**7 / 21 / 2016**

/s/

Gerald Bruce Lee
United States District Judge